UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMICA MUTUAL INSURANCE COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-00716 (VLB) |
| v. | : | |
| | : | |
| SUSAN B. LEVINE, | : | March  21, 2014 |
| Defendant. | : | |

MEMORANDUM OF DECISION GRANTING
DEFENDANT'S MOTION TO DISMISS [Dkt. 13]

I.      Introduction

The Plaintiff, Amica Mutual Insurance Company ("Amica"), a Rhode Island

corporation with its principal place of business in Lincoln, Rhode Island, brings

this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 against the

Defendant, Susan B. Levine, a Connecticut resident, related to an insurance claim

dispute.  The Defendant filed this motion to dismiss for failure to state a claim

upon which relief may be granted pursuant to Fed R. Civ. P. 12(b)(6) and for lack

of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and Local Rule 7.

For the reasons that follow, Defendant's Motion to Dismiss is GRANTED.

II.      Background

The following facts and allegations are taken from the Plaintiff's complaint

(the "Complaint") and supporting materials.  [Dkt. 1, Complaint].  Amica issued an

automobile insurance policy with the number 911206-22PV (the "Policy") to the

Defendant for the period between December 1, 2010 and December 1, 2011.  [Dkt.

1, ¶ 6].  The Policy provides, among other things, "Medical Payments Coverage."

[*Id.* at ¶ 7].  On or about September 6, 2011, the Defendant was involved in a

motor vehicle accident in which she claims to have sustained personal injuries.

[*Id.* at ¶ 8].  As a result, she made a claim for medical payments coverage under

the Policy.  [*Id.* at ¶ 9].  The Policy provides, in relevant part:

> **Part E—DUTIES AFTER AN ACCIDENT OR LOSS**
>
> **We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:**
>
> **….**
>
> **B.   A Person seeking any coverage must:**
>
> > **1. Cooperate with us in the investigation, settlement or defense of any claim or suit.**
> >
> > **2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.**
> >
> > **3. Submit, as often as we reasonably require:**
> >
> > > **a.  To physical exams by physicians we select. We will pay for these exams.**
> > >
> > > **b.  To examination under oath and subscribe the same.**
> >
> > **4. Authorize us to obtain:**
> >
> > > **a. Medical reports; and**
> > >
> > > **b. Other pertinent records.**
> >
> > **5. Submit proof of claim when required by us.**

[*Id.* at ¶ 10].  In accordance with the Policy conditions, Amica requested that the

Defendant undergo a medical examination, but the Defendant refused.  [*Id.* at ¶¶

11, 12].  As a result, Amica claims to have been prejudiced in its ability to

properly evaluate the Defendant's claim for medical payments benefits ("med pay"). [*Id.* at ¶ 13]. Amica further alleges that since the Defendant breached the Policy by refusing to undergo the requested medical examination, Amica has no duty to provide coverage for her claim. [*Id.* at ¶ 14].

### III.    Legal Standard

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

### A.  Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).  On a Rule 12(b)(1) motion, "'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'"  *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).  "However, where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

This action was filed in this Court pursuant to its diversity jurisdiction. Diversity jurisdiction is conferred on a district court in all civil actions between

citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  Neither party contests the residency prong of the statute, but the parties disagree as to whether the amount-in-controversy requirement is met.

The court measures "the amount in controversy as of the date of the complaint."  *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).  Moreover, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount."  *Id.* (citations and internal quotation marks omitted).  "This burden is hardly onerous, however, for we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Id.* (citations and internal quotation marks omitted).  "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold."  *Id.* (citations and internal quotation marks omitted).  "Our cases have set a high bar for overcoming this presumption.  The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim."  *Id.* (citations and internal quotation marks omitted).

In declaratory judgment actions based on diversity jurisdiction, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L.Ed.2d 383 (1977); *Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading*

*Inc.*, 697 F.3d 59, 68 (2d Cir. 2012).  In declaratory judgment cases involving "the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim—not the face amount of the policy."  *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002); *see also Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) ("Because the applicability of Budget's liability coverage to a particular occurrence is at issue, the amount in controversy is the value of the underlying potential tort action."); *Infinity Ins. Co. v. Sevilla Guerrero*, No. CIV F 07-583(AWI)(TAG), 2007 WL 2288324, at *3 (E.D. Cal. Aug. 8, 2007) (citing several cases from various jurisdictions for the same proposition); 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3710 (3d ed.1998) (hereinafter "Wright & Miller") (same).  However, if the "substance of the declaratory judgment action seeks to determine the validity of an insurance policy, then the policy limit is the amount in controversy." *Infinity Ins. Co.*, 2007 WL 2288324, at *3; *see also Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003) ("when the validity of a policy (as opposed to the insurer's obligation to pay) is in dispute, the face value of that policy is a proper measure of the amount-in-controversy."); *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416-17 (6th Cir. 1996) ("the clear federal rule is that where the validity of an insurance policy containing disability benefit provisions is involved in a diversity action in a federal district court, future potential benefits may be considered in computing the requisite jurisdiction amount . . . . In contrast, future potential benefits may not be taken into consideration in the

computation of the amount in controversy in diversity actions in Federal District Courts involving disability insurance where the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy." (citations and internal quotation marks omitted)); *Budget Rent-A-Car, Inc.*, 109 F.3d at 1473 ("Budget's maximum liability under the Rental Agreement is relevant to determining the amount in controversy only if the validity of the entire insurance policy is at issue . . . .").

The Defendant argues that the proper valuation of the amount in controversy here is the medical benefits due at the time the Complaint was filed because the Plaintiff is not contesting the validity of the Policy, just the interpretation of the requirements under the contract in providing benefits related to a specific claim.  [Dkt. 13-6, Memorandum of Law in Support of Defendant's Motion to Dismiss, p. 15-17].  The Plaintiff objects to this characterization stating that the Defendant has repudiated the contract entirely by refusing to submit to an independent medical examination, and, therefore, this anticipatory breach has placed into question the entire validity of the Policy.  [Dkt. 17, Plaintiff's Objection to Defendant's Motion to Dismiss, p. 4-9].

As support for its position, the Plaintiff cites the well-established principle that refusal to submit to an independent medical examination when required by an insurance contract constitutes a breach of the contract and prevents recovery under the policy.  *See Mowers v. Paul Revere Life Ins. Co.*, 204 F.3d 372, 374-75 (2d Cir. 2000) ("Courts in other jurisdictions have universally held that a disability claimant's failure to accede to an insurance company's reasonable request for an

7

[independent medical examination] constitutes the failure to perform a condition precedent and may absolve the insurer of further obligations under the contract."); *see also Thammavongsa v. Nationwide Mut. Ins. Co.*, No. CV03081625S, 2006 WL 853221, at *2 (Conn. Sup. Ct. March 16, 2006) ("'In the absence of estoppel, waiver or other excuse, cooperation by the insured in accordance with the provisions of the policy is a condition the breach of which puts an end to the insurer's obligation.'" (quoting *O'Leary v. Lumbermen's Mut. Cas. Co.*, 178 Conn. 32, 420 A.2d 888 (1979)).

Both the Plaintiff and the Defendant rely heavily on cases based on disability insurance contracts as the issue before the Court has not seemed to arise in the context of med pay provisions. This Court can discern no relevant distinction between these two categories of casualty insurance coverage, except to the extent discussed below, and will thus analyze and apply the precedent established in the context of disability coverage to the claim for coverage here. In *Acierno v. First Unum Life Ins. Co.*, the court held that the plaintiff's refusal to submit to a second independent medical examination constituted a "breach by anticipatory repudiation" of the long-term disability insurance contract in issue and, therefore, found that the insurance company was not liable for the plaintiff's claim for disability benefits. *Acierno v. First Unum Life Ins. Co.*, No. 98CV3885(SJ), 2002 WL 1208616, at * 2-4 (E.D.N.Y. March 31, 2002). That court relied on a rather broadly worded ruling from the First Circuit. In *VanHaaren v. State Farm Mut. Auto. Ins. Co.*, the First Circuit found that an insurance company was not liable to provide medical benefits under an uninsured motorist policy

8

when a plaintiff refused to submit to an independent medical examination. *VanHaaren v. State Farm Mut. Auto. Ins. Co.*, 989 F.2d 1, 6-7 (1st Cir. 1993).  The court stated that "[a]n [independent medical examination] clause is a condition precedent which imposes a duty of performance on the insured.  A contracting party's insistence, 'willfully or by mistake,' on preconditions to performance not stated in the contract, constitutes a breach by anticipatory repudiation."  *Id.* at 6.  The Plaintiff would have this Court read that language to mean that an insured's refusal to cooperate with a specific claim of benefits under an insurance contract constitutes an anticipatory repudiation of the entire policy such that the contract is deemed a nullity.  While the language employed by the First Circuit could be read to reach such a result, the conclusion of the case proves otherwise.  Even after stating that the insured breached the contract by refusing to submit to a medical examination, the court held that "State Farm's obligation to cover VanHaaren's claim for the alleged occurrence was excused upon VanHaaren's unequivocal repudiation."  *Id.* at 7.  The court nowhere stated that the contract was completely repudiated, it only stated that on that "occurrence," payment was excused due to the breach.  Reading these together, the case does not stand for the proposition that a refusal to submit to a medical examination constitutes a repudiation of the entire agreement; instead, all that results is a breach of the agreement relieving an insurer from an obligation as to that specific occurrence or claim for specific benefits.

The two remaining cases cited by the Plaintiff are also of little support because they specifically address claims arising under disability insurance

contracts and they do not support the Plaintiff's theory that refusal to submit to a medical examination invalidates an insurance contract.  Initially, it is important to highlight the difference in nature between disability insurance contracts and the Policy in this case.  A disability insurance contract is an agreement that provides for disability insurance should the insured become permanently disabled or otherwise injured, as detailed in the policy.  If the sole relationship between the parties is one that relates to the claim for disability benefits, it could be plausible that refusing to submit to an independent medical examination would be sufficient in nature to constitute a complete repudiation of the contract and relieve an insurer of all future obligations under the contract because the entire contractual relationship revolves around one possible claim: whether or not the party is disabled.  Med pay provisions in automobile insurance policies, however, do not provide the entire basis for the relationship between the insured and the insurer, but merely establish one subset of responsibilities and liabilities under the contract.

Even ignoring this difference, neither case cited by the Plaintiff held that refusing to submit to an independent medical examination invalidates the entire insurance policy.  Instead, the courts found that due to the insured's breach, the insurer had no obligation to pay the benefits requested.  For example, in *Acierno*, the plaintiff's claim was for "long-term disability benefits under the [insurance plan] on the basis of chronic pain."  *Acierno*, 2002 WL 1208616, at *1.  The court ruled in favor of the defendant because the insurer failed to submit to an independent medical examination.  *Id.* at *4.  However, the court nowhere stated

10

that the underlying policy was completely repudiated by the insured's refusal to submit to a medical examination, it just excused the defendant from paying those benefits at issue in the case.

The Second Circuit faced a similar question in *Mowers v. Paul Revere Life Ins. Co.*, 204 F.3d 372 (2d Cir. 2000).  In deciding whether an insured's refusal to submit to a functional capacity examination constituted a breach of the insurance contract, the court stated that the issue had not been squarely addressed by New York state courts, but those courts have "found that an insured's failure to submit to an examination under oath with respect to fire insurance claims is grounds for an insurer's refusal to pay *under the policy*."  *Id.* at 375 (emphasis added).  The court nowhere stated that failure to submit to a required examination would result in the complete repudiation of the contract, but in New York, it could permit the insurer to refuse payment under the policy with respect to that claim. *Id.*  Indeed, the Supreme Court noted, when discussing the effect of lapse of premium payments on an insurance contract, that "[t]hroughout the plaintiff's argument the declaration of a lapse is treated as equivalent to a declaration that the contract is a nullity.  But the two are widely different under such a policy as this.  The policy survived for many purposes as an enforceable obligation, though default in the payment of premiums had brought about a change of the rights and liabilities."  *New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 677 (1936).  Therefore, a breach of the agreement, such as the failure to pay premiums or the failure to submit to a medical examination, does not nullify the contract, but merely redefines the rights and liabilities of the parties.

Unlike in the cases cited by the Plaintiff, the underlying Policy here is not one for disability insurance, but for uninsured motor insurance.  The Defendant selected, as part of her automobile policy, to include a med pay provision.  In Connecticut, unlike other states, this coverage is optional, not statutorily mandated.  *See Jones v. Riley*, 263 Conn. 93, 106 (2003) ("individual insureds could decide for themselves whether to purchase med pay coverage as part of their automobile insurance.").  So, the Policy at issue is one that has at least two different parts, the first being insurance for automobile-related issues and the second for med pay benefits.  The Plaintiff's argument would have this Court hold that the entire Policy is invalid because the Defendant refused to submit to an independent medical examination related to a claim for specific benefits arising only under the med pay provision.  As detailed above, this position is incredibly broad, and this Court can find no authority to support the principle that refusal to submit to a medical examination under an insurance policy constitutes a breach of the agreement, relieving the insurer from all of its obligations under the policy as distinguished from its obligation to pay medical expenses for the diagnosis and treatment as to which the insured refused to submit to an examination.  Just as the Supreme Court noted, this lapse or breach in one aspect of the insurance contract cannot mean that the contract is a nullity because the contractual relationship between the Plaintiff and Defendant remained enforceable for many other purposes, such as for those claims that could still be timely submitted under the uninsured motorist provision.  *See Voris v. Middlesex Mut. Assur. Co.*, 297 Conn. 589, 604-605 (Conn. 2010) (finding valid a statute which states that

"[n]o insurance company doing business in this state may limit the time within which any suit may be brought against it or any demand for arbitration on a claim may be made on the uninsured or underinsured motorist provisions of an automobile liability insurance policy to a period of less than three years from the date of accident . . . ." Conn. Gen. Stat. § 38a-36(g)(1)).

In *Am. Standard Ins. Co. of Wis. v. Rogers*, the insurer brought a declaratory judgment against the driver of an automobile seeking a declaration that it need not indemnify or defend the driver because the auto policy "was not in force at the time of the accident because the premiums had not been paid." *Am. Standard Ins. Co. of Wis. V. Rogers*, 123 F. Supp. 2d 461, 464 (S.D. Ind. 2000). The court held that it would not use the face value of the policy "to determine the amount in controversy in this case because this dispute involves the applicability of the insurance policy to a particular occurrence, not (as in cases involving allegations of fraudulent statements that would avoid the contract) the validity of the entire policy." *Id.* It then stated that it was

> satisfied that American Standard does not deny the validity of the insurance contract per se; it merely denies that the policy was in force after a certain date: the policy might apply to an accident before the policy lapsed. This suit relates to American Standard's duty to defend and indemnify with respect to a particular accident that occurred after the alleged lapse of coverage, so we must examine the underlying claim to determine the amount in controversy.

*Id.* at 464-65. Even though that decision is not binding on this Court, it is persuasive. Here, the Plaintiff is not really arguing that the entire contract is void *ab initio*, but rather that it is not obligated in this instance to pay med pay benefits

13

because the Defendant refused to submit to a medical examination.  Even though that contention may be perfectly correct, the issue before this Court is whether the amount-in-controversy requirement is satisfied so that the Court has subject matter jurisdiction over the action.  The Plaintiff nowhere alleges in the Complaint that the entire agreement is void or puts into question the existence of the contract, such as through the misrepresentation or fraudulent inducement doctrines.  Instead, the Plaintiff specifically requests a "declaratory judgment that it has no duty to provide medical payments benefits to the defendant."  [Dkt. 1, p. 5].  Accordingly, the Plaintiff is not asking for a declaration that the alleged breach amounted to a repudiation of the entire contract, just that it need not provide med pay benefits to the Defendant resulting from the September 6, 2011 accident.  Furthermore, in the Plaintiff's Response to the Defendant's motion to dismiss, the Plaintiff argues that the total value of the amount in controversy as measured by the face value of the Policy is $100,000.  [Dkt. 17, p. 7].  Even though the Plaintiff claims its argument is based on a complete repudiation of the Policy, $100,000 is not the face value amount of the overall Policy, it is just the total amount of the med pay portion.  The Plaintiff cannot have it both ways, arguing that the entire insurance Policy has been repudiated, but the value in dispute is limited merely to a portion of the overall Policy.  Therefore, there is no real allegation placing the validity of the entire insurance Policy in question.  *See Conzo v. SMA Life Assur. Co.*, No. 02-civ-11243(DLC), 2003 WL 21018823, at *2 (S.D.N.Y. May 6, 2003) ("A court may only consider the entire value of an insurance policy or other installment contract in its determination of the amount

14

in controversy if the validity of the policy or contract itself is at issue. . . . The plaintiff has not alleged that the insurance policy is itself invalid or that the defendant has repudiated the policy."); *see also Hartford Ins. Grp.*, 293 F.3d at 911 ("Hartford seeks a judicial declaration that its policy does not extend to Lou-Con employees who sustained asbestos-related injuries while working for Murphy Oil.  It is not seeking to void the entire insurance contract.  Accordingly, the district court properly measured the jurisdictional amount in controversy by the value of the underlying claim.").

Even though the law on this issue clearly indicates that the Plaintiff's reading of the amount-in-controversy requirement is not correct, it also should fail as a matter of policy.  Courts should be hesitant in creating sweeping rules of law that would create de facto areas of federal jurisdiction.  *Burks v. Acceptance Cas. Ins. Co.*, 11CV00148(JLH), 2011 WL 3475485, at *2 (E.D. Ark. Aug. 9, 2011) ("If the Court [permitted the total value of an insurance policy to be the amount in controversy *per se* in diversity actions] . . .the decision of this Court would be authority for asserting federal jurisdiction in any . . . suit involving a liability insurance policy with applicable coverage over [the requisite jurisdictional amount] no matter how small the claim actually being made.").  If the Court were to follow the Plaintiff's interpretation, it would "federalize" insurance claims where the amount actually in dispute is less than $75,000.  That would be patently contrary to the limited diversity jurisdiction conferred on this Court by Congress.

Having determined that the amount in controversy is measured by the value of the Defendant's damages claim, the Court must now quantify that claim.

The Defendant has averred that between September 6, 2011 and August 13, 2013, the Defendant incurred medical expenses totaling $46,905.24. [Dkt. 13-8, Affidavit of Susan B. Levine in Support of Defendant's Motion to Dismiss, ¶ 12]. The Plaintiff does not allege that the Defendant has not achieved maximum medical improvement, that she has a permanent disability, or that she is still being treated for her injuries. Accordingly, there are no facts from which the Court could infer that the Defendant will continue to incur expenses and endure pain, suffering and loss of life's enjoyment or submit any other claims for reimbursement under the Policy. Given the fact that the Plaintiff's only allegation tending to establish the amount in controversy is the generic claim in the Complaint that the amount "exceeds $75,000.00, exclusive of interest and costs" is not only unsupported by the record but contradicted by the Defendant, this Court cannot find that the Plaintiff has established the requisite amount in controversy to meet the jurisdictional threshold. [Dkt. 1, ¶ 5]. Therefore, the Defendant has shown to a legal certainty that the amount in damages at the time the Complaint was filed was below the requisite jurisdictional amount. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004) (noting that under the "time of filing" rule, "all challenges to subject-matter jurisdiction premised on diversity of citizenship [are measured] against the state of facts that existed at the time of filing . . . ."); *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) ("We have observed that the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in

16

controversy when damages are not requested.") (citations and internal quotation marks omitted); *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (noting that the amount in controversy for a complaint seeking an injunction for defendant's failure to pay disability payments was for payments due until the date the complaint was filed, even though the plaintiff alleged she was permanently disabled).

While one could venture that the Defendant's damages continue to mount, "[f]or breach short of repudiation or an intentional abandonment equivalent thereto, the damages under such a policy as this do not exceed the benefits in default at the commencement of the suit." *N.Y. Life Ins. Co.*, 297 U.S. at 678. Therefore, even assuming that future benefits may accrue, the Court "would necessarily need to engage in impermissible speculation—evaluation without the benefit of any evidence [proving] the value of individual claims." *Auto-Owners Ins. Co. v. Scott*, 9-cv-166(HL), 2009 WL 3011244, at *2 (M.D. Ga. Sept. 16, 2009); *see also Toler v. State Farm Mut. Auto. Ins. Co.*, 25 F. App'x 141, 144 (4th Cir. 2001) ("Although the policy limit under this provision is $100,000, there is no evidence or allegations regarding the extent of Teresa's 'bodily injury' and 'property damage' other than her $39,000 in medical bills."); *Lewis v. Auto Club Family Ins. Co.*, No. CIV.A. 11-169-D-M2, 2011 WL 3444312, at *4 (M.D. La. July 7, 2011) *report and rec. adopted*, No. CIV.A. 11-169-JJB-CN, 2011 WL 3444224 (M.D. La. Aug. 8, 2011) (finding that in declaratory action brought for the denial of med pay benefits, "the amount in controversy . . . is to be measured based upon the actual monetary value of the med pay claims that were submitted and denied

based upon the excess coverage exclusionary provision, rather than by totaling the remaining policy limits for the policies applicable to those claims."). Furthermore, any future benefits that might be claimed would accrue subsequent to the time of filing, and "[j]ust as subsequent events cannot divest a court of jurisdiction, subsequent events cannot vest a court with jurisdiction that did not exist at the time the . . . complaint was filed."  *Spradlin v. Pikeville Energy Grp., LLC*, No. Cv. 12-111(ART), 2012 WL 6706188, at *8 (E.D. Ky. Dec. 26, 2012); *see also Correspondent Servs. Corp. v. J.V.W Inv., Ltd.*, No. 99 CIV.8934(RWS), 2004 WL 2181087, at *8 (S.D.N.Y. Sept. 29, 2004), *judgment entered sub nom.*, 232 F.R.D. 173 (S.D.N.Y. 2005) *and aff'd sub nom.*, 442 F.3d 767 (2d Cir. 2006) (finding that the court did not have subject matter jurisdiction when the object of the litigation was the ownership of a certificate of deposit and the certificate of deposit was alleged to be worthless at the time of filing even though the plaintiff claimed an injury of $10 million); *Walker v. Walker*, 267 F. Supp. 2d 31, 33 (D.D.C. 2003) (holding that, to the extent the plaintiff was seeking declaratory relief regarding the ownership of certain stock, the amount in controversy was the value of the stock at the time of filing).

It could be the case that the Defendant's medical benefits ceased accruing on August 13, 2013, thereby rendering speculative the future amount of any claim.  Accordingly, the Plaintiff has not proven by a preponderance of the evidence that the jurisdictional amount-in-controversy requirement has been met. Therefore, the case is DISMISSED for lack of subject matter jurisdiction.

### B.    Failure to State a Claim Upon Which Relief Could be Granted

The Defendant also argues that the Plaintiff does not adequately plead the factual predicate for its claim.  [Dkt. 13-6, p. 20-24].  The Plaintiff responds that it has sufficiently alleged that the Defendant breached her obligations because she failed to submit to an independent medical examination when asked by the company and that the Defendant should have made a motion for a more definite statement if she believes that the prejudicial nature of the Defendant's refusal is not clear.  [Dkt. 17, p. 9-12].

The Policy states, in relevant part, that the Plaintiff has "no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us: . . . submit, as often as we reasonably require: . . .[t]o physical exams by physicians we select."  [Dkt. 1, ¶ 10].  The Plaintiff alleges that it "requested that the defendant undergo medical examinations," but the "defendant has refused to undergo the requested medical examinations."  [*Id.* at ¶¶ 11-12].  "As a result," the Plaintiff alleges that it "has been prejudiced in its ability to properly evaluate the defendant's claim for medical payments benefits." [*Id.* at ¶ 13].  Since the "defendant is seeking benefits under an insurance policy, the terms of that contract controls."  [Dkt. 17, p. 10].  There is no rule of law completely independent of the terms of the contract that states that an insurer is in breach of its insurance policy by failing to undergo a requested medical examination.  If any breach is to be found, it must be based on the terms of the specific insurance policy in question.  Here, the Policy specifically states that the Plaintiff is only relieved of its duties to provide coverage if it is prejudiced by the

19

insured's refusal to submit to a medical examination.  In the Complaint, the Plaintiff alleges that it was prejudiced "in its ability to evaluate the defendant's claim for medical payments benefits."  [*Id.* at ¶ 13].   The Plaintiff has claimed that it has been harmed by the Defendant's refusal to abide by the Policy and afford the Plaintiff an opportunity to assess the nature and extent of the Defendant's injuries.  Without the ability to do so, Amica is left with two choices.  The first is to pay the Defendant whatever she and her doctors request, and the second is to pay nothing.  In either event Amica is harmed by the Defendant's refusal.  In the first instance, it may pay more than it is legally obligated to pay, and in the second, it is exposed to suit and possibly punitive damages under Connecticut's Unfair Insurance Practices Act.  Indeed, Amica is harmed by having to bring this action.  The Defendant seeks to use that which she has wrongfully withheld as the basis for challenging the sufficiency of the Plaintiff's pleading.  The allegations of the Complaint are, therefore, sufficient as a matter of law to state a claim upon which relief can be granted.

As to the Plaintiff's second argument, that the Defendant should have filed a motion for a more definite statement under Rule 12(e) instead of its motion to dismiss, the Court finds that argument meritless.  [Dkt. 17, p. 12].  Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Nothing in this rule requires that a party move for a more definite statement before moving to dismiss the complaint.  On the contrary, the language of the rule makes clear that such a

motion is permissive.  In any event, the purposes of a motion for a more definite statement and for a motion to dismiss are different.  A more definite statement is used when the responding party cannot discern the claim to which a response is required while a motion to dismiss is used when the pleading party has failed to sufficiently allege facts supporting the elements of its claim.  It is entirely possible that a motion to dismiss could be granted even though the opposing party understands the nature of the underlying claim against it.  In any event, the Court would find that the Plaintiff has sufficiently pled a cause of action, and the Defendant's motion to dismiss would be DENIED on this basis.

### IV.    Conclusion

The court having found that it lacks subject matter jurisdiction, Defendant's [Dkt. 13] Motion to Dismiss is GRANTED.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: March 21, 2014